Steven R. Young, Atty. Bar #96258
William F. Zulch, Atty. Bar #94696
LAW OFFICES OF STEVEN R. YOUNG
Civil Justice Attorneys
600 Anton Blvd., Suite 650
Costa Mesa, CA 92626
(714) 673-6500   Fax: (714) 545-0355
Email: bestlawyer@aol.com

Attorney for Cross-Defendant

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL TELECOM CORPORATION, a California corporation,<br><br>   Plaintiff,<br><br>  vs.<br><br>SEOWON INTECH CO., LTD, a Korean corporation, and Does 1-10;and DOES 1 through 20, inclusive<br><br>   Defendants.<br><br>SEOWON INTECH CO., LTD, a Korean corporation,<br><br>   Cross-Complainant<br><br>  vs.<br><br>GLOBAL TELECOM CORPORATION, a California corporation,<br><br>   Cross-Defendant | CASE NO. 8:16-cv-02212-AG-DFM<br><br>Hon. Andrew J. Guilford<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SEOWON INTECH CO., LTD'S COUNTER-COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><br>DATE:  February 13, 2017<br>TIME:  10:00 a.m.<br>CRTRM: 10D |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    CROSS DEFENDANT GIVES NOTICE THAT on February 13, 2017 at 10:00 a.m., before the Honorable  Judge Andrew J. Guilford, in Courtroom 10D of the United States Courthouse for the Central District of California, Southern Division, 411 West 4th Street, Santa Ana, California, Plaintiff and Counter Defendant Global Telecom Corporation, will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 9(b) (for failure to plead fraud with particularity) and Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) to dismiss the Counterclaims for fraud, conversion, unfair competition, misappropriation of trade secrets, intentional interference with contract/economic advantage, and **Lanham Act** violations.

    As the accompanying Memorandum of Points and Authorities discusses, there is good cause for the Court to grant the relief Global Telecom requests.  The Counterclaim does not describe with requisite specificity, the alleged fraudulent conduct Global Telecom committed, and otherwise fails to state sufficient facts to any cause of action in the counterclaims.

    This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing of this Motion.

1         This Motion is made following the conference with counsel pursuant to Local

2    Rule 7-3 which took place on January 5, 2017.

3

4    Dated: January 12, 2017        **LAW OFFICES OF STEVEN R. YOUNG**

5

6                                 /s/

By: _____

7                      Steven R. Young, Esq., Attorney for Plaintiff
     and Cross-Defendant Global Telecom
8                      Corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3   MEMORANDUM OF POINTS AND AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . 8

4   1.      INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5
6   2.      SEOWON'S FIRST COUNTERCLAIM FOR FRAUD FAILS TO
            MEET PLEADING STANDARDS UNDER COMMON LAW OR
7           FED. R. CIV. P. RULE 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8                   A.      Seowon Does Not Meet Common Law Fraud Pleading
                            Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
9                   B.      Seowon's First Counterclaim for Fraud Does Not Meet
                            Rule 9 (b) Requirements.. . . . . . . . . . . . . . . . . . . . . . . . . . . 12
10

11  3.      SEOWON'S SECOND COUNTERCLAIM FOR CONVERSION IS
            PRE-EMPTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
12

13  4.      SEOWON'S THIRD COUNTERCLAIM FOR UNFAIR
            COMPETITION IS INSUFFICIENT AND PRE-EMPTED. . . . . . . . . . . . 13
14

15  5.      THE CONCLUSIONARY ALLEGATIONS OF  SEOWON'S
            FOURTH COUNTERCLAIM FOR  MISAPPROPRIATION OF
16          TRADE SECRETS FAILS FOR LACK OF SPECIFICITY. . . . . . . . . . . . 15

17
18  6.      THE ABBREVIATED, VAGUE AND CONCLUSIONARY
            ALLEGATIONS OF THE FIFTH COUNTERCLAIM DO NOT
19          STATE A CLAIM FOR "INTERFERENCE WITH CONTRACT
            AND/OR PROSPECTIVE ECONOMIC RELATIONS." .. . . . . . . . . . . . . . 17
20

21  7.      SEOWON'S SIXTH COUNTERCLAIM FAILS TO STATE A CLAIM
            UNDER THE LANHAM ACT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
22

23  8.      CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A&H Sportswear, Inc. v Victoria's Secret Stores, Inc.*, (3rd Cir. 2000)
237 F. 2d 198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ashcroft v Iqbal,* (2009) 556 U.S.662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Bell Atlantic Corp. v Twombly,* (2007) 550 U.S. 544 . . . . . . . . . . . . . . . . . . . . 18, 19

*Douglas v Osteen*, (3rd Civ. 2009) 317 Fed. App.'x 97. . . . . . . . . . . . . . . . . . . 19

*Pellerin v Honeywell International Inc.,* (S.D. Cal. 2012) 877 F. Supp 2d 983. . . 16

*Schreiber Distributing v Serv-Well Furniture Co.,* (9th Cir. 1986)
806 F.2d 1393 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vess v Ceiba-Geigy Corp.,* (9th Cir. 2003) 3167 F.3d 1097 . . . . . . . . . . . . . . . . . 12

## STATUTES

Lanham Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18, 19

United States Code:

15 U.S.C. §1051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15 U.S.C. §1125(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. §1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

## RULES

Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Other Materials

Manual of Model Criminal Jury Instructions,
U.S. Court of Appeals for the Ninth Circuit, 8.124 ("Wire Fraud"). . . . . . . 14

1

# TABLE OF AUTHORITIES

2

## STATE CASES

3

Bank of the West v Superior Court

4
    (1992) 2 Cal.App.4th 1254................................................ 15

5

Conrad v Bank of America

6
    (1996) 45 Cal.App.4th 133................................................ 10

7

Diodes, Inc. v Franzen

8
    (1968) 260 Cal.App.2d 244. ............................................ 16

9

Engalla v Permanente Medical Group, Inc.

10
    (1997) 15 Cal.4th 951................................................... 10

11

Everts v Matterson

12
    (1942) 21 Cal.2d 437. .................................................. 11

13

K.C. Multimedia, Inc. v Bank of America Tech and Operations, Inc.

14
    (2009) 171 Cal.App.4th 939.............................................. 15

15

Khoury v Maly's of California, Inc.

16
    (1993) 14 Cal.App.4th 612.............................................. 14

17

Magali v Farmers Group, Inc.

18
    (1996) 48 Cal.App.4th 471.............................................. 10

19

People v Gaul-Alexander

20
    (1995) 32 Cal.App.4th 439.............................................. 14

21

People v Vincent

22
    (1993) 19 Cal.App.4th 696.............................................. 14

23

Rochlis v Walt Disney Co.

24
    (1993) 19 Cal.App.4th 201.............................................. 10

25

Silvaco Data Systems v  Intel Corp.
    (2010) 184 Cal.App.4th 201.............................................. 13

26

27

28

1

**TABLE OF AUTHORITIES**

2

**STATE: STATUTES**

Business & Professions Code §17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Civil Code §1719(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Civil Code §3426.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Civil Code §3426.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Civil Code §3426.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Civil Code §3426.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Penal Code §470. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Penal Code §470(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**OTHER AUTHORITIES**

CACI 2201.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CACI 2202.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Uniform Trade Secrets Act. . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

California's Unfair Competition Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3     ## 1.     INTRODUCTION

4

5          This litigation began when Plaintiff Global Telecom Corporation ("Global")

6     sued Seowon Intech Co., Ltd. ("Seowon") after Seowon breached a 2015 exclusive

7     distribution agreement between the parties. Consistent with the belief that the best

8     defense is a strong offense, Seowon is attempting to hide its breach under a bushel

9     of vague, conclusionary and sensationalized facts.

10          The counter complaint alleges the 2015 exclusive distribution agreement is a

11     forgery. [Counterclaim ¶¶20 - 23, p. 17, lns. 16-28]  Although the Counterclaim

12     acknowledges that Seowon entered into a distributor relationship with Global via a

13     2012 written agreement [Counterclaim, ¶8 - 9, p. 14, ln. 21 - p. 15, ln. 8], the

14     wrongs of which Seowon complains apparently took place outside any written

15     agreement (at least none that Seowon acknowledges).

16          Instead, Seowon asserts that Global's fraud induced Seowon to "provide

17     financing and technical support to develop, market and distribute"

18     telecommunication products knows as "CPE" or customer premises equipment

19     (i.e., telecommunications hardware located at the home or business of the customer)

20     [Counterclaim, ¶¶10-11, p. 15, lns. 11-23], causing Seowon to "suffer losses when

21     the demand promised by GLOBAL failed to materialize and GLOBAL failed to pay

22     for the products it did order." [Counterclaim, ¶12, p. 16, lns. 1-6]

23          As part of those efforts, Seowon "participated in and supervised" a

24     certification process for a specified CPE device know as a "fail over" or FOC (a

25     backup device for data outage) marketed to Sprint. [Counterclaim, ¶¶13-15, p. 16,

26     lns. 8-22] Seowon complains that the certification ultimately received "was not a

27     certification from Sprint directly" [Counterclaim, ¶16, lns. 23-28] and further

28

alleges that Global by "submitting the [certification] application in its own name" [Counterclaim, ¶18, pg. 17 ln. 7 - 11] deprived Seowon of its benefit, along with Seowon's "intellectual property, potential sales and the benefit of the money it expended developing, marketing and certifying the FOC product." [Counterclaim ¶19, pg. 17, lns. 12-14]

Seowon offers as actionable its claim that Global presented it with a "distribution agreement for CPE products and technology... purportedly executed on or around [sic] January 9, 2015." [Counterclaim, ¶20, pg. 17, lns. 16-19] Seowon avers that it "initially believed" the 2015 agreement to be "valid", but upon an investigation "discovered" that it was "counterfeit".  [Counterclaim, ¶21, pg. 17, lns. 20-22] This conclusion had two bases: the agreement "was not signed by [Seowon officer] Min Son." [Counterclaim, ¶22, pg. 17, lns. 23-24] and the Seowon stamp affixed to the purported document was not "the correct size." [Counterclaim, ¶22, pg. 17, lns. 25-28]

Thus Seowon's counterclaim alleges that Global submitted a "counterfeit" distribution agreement to Seowon; that Seowon was "fraudulently" induced to expend resources and share intellectual property to develop, certify and market CPE products; and that Global obtained the product certification in Global's name and wrongfully obtained its benefit.[1]

//

_____

[1] Seowon also appends to its Counterclaim wholly impertinent allegations about disputes over payment of two or three purchase orders [Counterclaim, ¶¶24-28, pg. 18, lns. 2-19], and allegations "on information and belief" that Global "negotiated with a Chinese technology manufacturer to produce unauthorized versions of Seowon's intellectual property" [Counterclaim ¶29, pg. 18, lns. 22-26] and that Global "sent letters and/or emails" to actual or potential Seowon customers to disrupt relations with Seowon. [Counterclaim, ¶30, pg. 17, lns. 1-3]  As shown below, no claim for relief can be concocted from the allegations.

1    From allegation acorns Seowon grows mighty oaks of claims sounding in

2    fraud, conversion, unfair competition, trade secrets, misappropriation, interference

3    with contract "and/or" prospective economic relations, and **Lanham Act** violations.

4    None of the causes of action state a claim.

5

6    **2.    SEOWON'S FIRST COUNTERCLAIM FOR FRAUD FAILS TO**

7    **MEET PLEADING STANDARDS UNDER COMMON LAW OR**

8    **FED. R. CIV. P. RULE 9(b)**

9

10    **A.    Seowon Does Not Meet Common Law Fraud Pleading Standards**

11

12    Fraud in California requires "1. misrepresentation (false representation,

13    concealment, or non-disclosure); 2. knowledge of falsity (or 'scienter'); 3. intent to

14    defraud, i.e., to induce reliance; 4. justifiable reliance; and 5. resulting damage."

15    **Engalla v Permanente Medical Group, Inc.** (1997) 15 Cal.4th 951, 974.

16    An action also lies for a "promise, made without any intention of performing

17    it" **Civil Code** §1719(4); however, "in order to support a claim of fraud based upon

18    the alleged failure to perform a promise, it must be shown that the promisor did not

19    intend to perform at the time the promise was made". **Conrad v Bank of America**

20    (1996) 45 Cal.App.4th 133, 157.  Under such a claim, "something more than

21    nonperformance is required to prove the defendant's intent not to perform his

22    promise." **Magali v Farmers Group, Inc.** (1996) 48 Cal.App.4th 471, 481.

23    "Promises too vague to be enforced will not support a fraud claim any more than

24    they will one in contract." **Rochlis v Walt Disney Co.** (1993) 19 Cal.App.4th 201,

25    216 (promises regarding "appropriate" financial rewards).

26    A statement about future value is ordinarily classified as a "speculative

27    observation and a mere statement of opinion, and as such, does not constitute a

28

basis for a complaint of fraud". **Everts v Matterson** (1942) 21 Cal.2d 437, 451.

Seowon's scattershot first counterclaim for fraud, which incorporates sundry allegations ranging from "false" projections, to "false" representations as to Global's "intentions to market and sell CPE equipment," to a "counterfeit" agreement - does not in any case properly allege a common law claim for fraud under California law.

Global's allegedly fraudulent provision of "false pricing and sales projections" [Counterclaim, ¶11, pg. 15, lns. 20-21] is not actionable because it, like the representation of future value in the **Everts** case, supra, is a statement of opinion, as no one has a crystal ball allowing them to foretell the future, nor may one convert a projection into a falsehood by operation of hindsight.

Seowon's "add-on" allegation in the above-referenced paragraph to "errors and omissions" (viz. incorrect pricing etc.) obviously lacks even a inference of requisite scienter.

Seowon's further allegations of fraud in the counterclaim - while incorporating the preceding jumble of factual allegations - appear to focus on two alleged wrongs: (1) Global's alleged misrepresentations as to "their intentions to market and sell CPE equipment" [2] and (2) a misrepresentation "that SEOWON and GLOBAL had entered into a distribution agreement in January of 2015. [Counterclaim, ¶33, pg. 19, lns. 11-14]

Seowon's claim that Global lied about its "intentions to market and sell CPE equipment" - a promise made without intent to perform - directly contradicts the allegations concerning allegedly unpaid purchase orders [Counterclaim, ¶¶24 - 28,

---

[2] The first counterclaim for fraud also incorporates representations regarding "sales performance", which appear to relate back to the claim of "errors and omissions" including "misrepresentations of GLOBAL's actual sales performance." [Counterclaim, ¶11, pg. 15, lns. 21-23] As explained above, this claim lacks the requisite element of scienter.

1  pg. 28, lns. 2-19] and the attached Exhibits 3 - 6 which on their face show that
2  Global is marketing and selling CPE equipment.  The Counter Claim fails to allege
3  what the alleged representations about the level of Global's sales and marketing for
4  CPE products was, let alone the falsity concerning the sales and marketing.

5      Seowon's fraud claim based on "counterfeit" 2015 distribution agreement
6  likewise lacks any factual allegations to support a claim for relief.  Although
7  Seowon claims it "initially believed [the 2015 agreement] to be valid", it
8  subsequently "investigated" and determined it to be "counterfeit." [Counterclaim,
9  ¶21, lns. 20-22] There are as previously noted countervailing allegations that
10  Seowon was induced to expend resources futilely by Global's "misrepresented"
11  sales projections and intentions respecting sales and marketing.  Nothing in
12  Seowon's allegations ties these alleged misrepresentations to the "counterfeit"
13  agreement. It is unclear how Seowon could have relied on this "forgery" or how it
14  induced Seowon to take detrimental actions.  Therefore, there is no claim for fraud
15  stated through Seowon's allegations of the "counterfeit" 2015 agreement.

16  

17      **B.**    **Seowon's First Counterclaim for Fraud Does Not Meet Rule 9 (b)**
18      **Requirements**

19      The standard under Fed. R. Civ. Rule 9(b) for pleading fraud is well
20  established in the Ninth Circuit.  A claimant must allege the "who, what, where,
21  when and how" of the fraudulent conduct. **Vess v Ceiba-Geigy Corp**. (9th Cir.
22  2003) 3167 F.3d 1097, 1106.  Fraud allegations must state "time, place and specific
23  content of the false representations as well as the identity of the parties to the
24  misrepresentation." **Schreiber Distributing v Serv-Well Furniture Co.** (9th Cir.
25  1986) 806 F.2d 1393, 1401.

26      The Counter Claim does not allege who at Global made the allegedly false
27  misrepresentations, what the context of the misrepresentations were, where and

28

1  when they were made, and the means by which they were made.  The allegations

2  supporting Seowon's First Counterclaim for Fraud are therefore wholly inadequate

3  to state a claim under the Federal Rules and should be dismissed.

4

5  ### 3.  SEOWON'S SECOND COUNTERCLAIM FOR CONVERSION

6  ### IS PRE-EMPTED

7

8  Seowon's second counterclaim for conversion alleges "on information and

9  belief" that Global "converted and misappropriated" Seowon's intellectual property

10  rights, which it identifies as "designs, technical data, FOC certification."

11  [Counterclaim, ¶¶37-38, pg. 19 lns. 26 - pg. 20, ln. 4]

12  Claims for "conversion" of intellectual property such as identified by Seowon

13  in its Counter Complaint are pre-empted by the California Uniform Trade Secrets

14  Act, **Civil Code** §3426 et seq.  **Silvaco Data Systems v  Intel Corp**. (2010) 184

15  Cal.App.4th 201, 236.  Seowon's fourth counterclaim is brought under that same

16  superseding statute.  Hence, Seowon's counterclaim for conversion must be

17  dismissed.

18

19  ### 4.  SEOWON'S THIRD COUNTERCLAIM FOR UNFAIR

20  ### COMPETITION IS INSUFFICIENT AND PRE-EMPTED

21

22  Seowon's third counterclaim for violation of California's Unfair Competition

23  Law, **Business & Professions Code** §17200 et seq., appears wholly dependent on

24  its allegation that the 2015 exclusive distributor agreement is a "forgery."

25  [Counterclaim, ¶¶41-43, pg. 20, lns. 13-24] Seowon alleges that the "counterfeit"

26  agreement violates **Penal Code** §470 (forgery) and the Federal wire fraud criminal

27  statute, 18 **U.S.C.** §1343.

28

1        A claim in an action under the Unfair Competition Law predicated on

2   "unlawful" activity is only as good as the underlying claims of such "unlawfulness"

3   - if the underlying claims fail, so does the unfair competition claim. **Khoury v**

4   **Maly's of California, Inc.** (1993) 14 Cal.App.4th 612, 619.

5        Forgery under **Penal Code** §470 has three elements:

6             a writing or other subject of forgery;

7             the false making of the writing; and

8             intent to defraud.  **People v Gaul-Alexander** (1995) 32 Cal.App.4th

9             439, 741.

10  There is no mention of "exclusive distributor agreement" under the items listed in

11  **Penal Code** §470(d) whose forgery constitutes a criminal act.  However a writing

12  not listed may still be the basis for a forgery conviction if on its face the writing

13  could possibly defraud someone.  **People v Vincent** (1993) 19 Cal.App.4th 696,

14  700.

15       In its third counterclaim, Seowon fails to allege the elements necessary to

16  establish the crime of forgery under **Penal Code** §470, such as intent to defraud.

17  Moreover it is far from clear, since Seowon does not attach the alleged forgery or

18  describe its contents, that the document necessarily and on its face could possibly

19  defraud Seowon.  As a result, Seowon's pleading of alleged "forgery" by Global is

20  insufficient on which to base its third counterclaim for unlawful competition.

21       The elements of 18 **U.S.C**. §1343 wire fraud are: (1) knowing participation in

22  a scheme to defraud; (2) the representations or omissions made in furtherance of the

23  scheme were material; (3) the defendant acted with the intent to defraud; and (4)

24  use of a wire communication to carry out an essential part of the scheme. **Manual**

25  **of Model Criminal Jury Instructions**, U.S. Court of Appeals for the Ninth Circuit,

26  8.124 ("Wire Fraud").

27  *//*

28

1    Since Seowon fails to allege intent to defraud in asserting a wire fraud
2    violation by Global, and further fails to explain the materiality of the "forgery" to
3    the alleged scheme, that leg of its unfair competition counterclaim fails as well.

4    Seowon's third counterclaim purports to seek "damages" [Counterclaim, ¶44,
5    pg. 20, lns. 25-27).  Damages are not available for a violation of the unfair
6    competition law.  **Bank of the West v Superior Court** (1992) 2 Cal.App.4th 1254,
7    1266.

8    Finally, as part of this counterclaim, Seowon alleges that Global
9    "fraudulently obtain[ed]...intellectual property" from Seowon (Counterclaim, ¶43,
10   pg. 20, lns. 21-22], elsewhere identified as "designs, technical data, FOC
11   certification." This is the same nucleus of facts upon which Seowon's Fourth
12   Counterclaim for Misappropriation of Trade Secrets is based under **California**
13   **Civil Code** §3426.7 *et seq*, "A claim for common law or even statutory unfair
14   competition may be pre-empted under **Civil Code** §3426.6 if it relies on the same
15   facts as the misappropriation claim". **K.C. Multimedia, Inc. v Bank of America**
16   **Tech and Operations, Inc.** (2009) 171 Cal.App.4th 939, 961. To the extent that
17   Seowon's Third Counterclaim alleges misappropriation of trade secrets, it is
18   therefore pre-empted by California's Uniform Trade Secrets Act.

19

20   **5.    THE CONCLUSIONARY ALLEGATIONS OF  SEOWON'S**
21   **FOURTH COUNTERCLAIM FOR  MISAPPROPRIATION OF**
22   **TRADE SECRETS FAILS FOR LACK OF SPECIFICITY**

23   Seowon's fourth counterclaim alleges that Global "misappropriated
24   Seowon's trade secrets" under California Uniform Trade Secrets Act, **Civil Code**
25   §3426 *et seq*. [Counterclaim, ¶¶45-50, pg. 21, lns. 2-27]

26   The "trade secrets" are allegedly a "variety of data" and specifications which
27   "derive independent economic value from not being generally known to the general

28

public."  Seowon claims it had made "reasonable" efforts to maintain the "secrecy" of the secrets. [<u>Counterclaim</u>, ¶47, pg. 2, lns. 7-13]

Immediately after that allegation, however, Seowon states that it "shared" these secrets with Global as part of their mutual efforts to develop and certify "fail over" technology.  Even more astonishingly, Seowon alleges that Global knew or should have known, not just that it had a "duty" to maintain the secrecy of the information voluntarily shared by Seowon (without identifying the basis of that "duty"), but also that Global knew or should have known that it acquired these alleged "trade secrets" "by improper means," including "misrepresentations" (which as previously noted are not actionable as alleged), and the submission of the application for FOC certification in Global's name only. [<u>Counterclaim</u>, ¶48, pg. 21, lns. 14-22]

These conclusory, scattershot allegations are woefully inadequate to state a claim under California's Uniform Trade Secrets Act.  First, it has long been the requirement in pleading a claim under that Act that the plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." **Diodes, Inc. v Franzen** (1968) 260 Cal.App.2d 244, 263.[3]  Seowon fails to plead even a minimally plausible basis for why trade secret protection should apply to the data that Global allegedly "misappropriated."

Other than a conclusory statement that tracks the statute's language that Seowon "made reasonable efforts" to preserve the secrecy of the information, there

---

[3] "[F]ederal courts in the Ninth Circuit look to **<u>Diodes</u>** for guidance on the applicable pleading standard for claims brought under the CUTSA."  **<u>Pellerin v Honeywell International Inc.</u>** (S.D. Cal. 2012) 877 F. Supp 2d 983, 988 n.1

1   is no allegation of what Seowon did to preserve the secrecy, especially given that
2   Seowon admits it "shared this information with Global at Global's request."
3   Seowon's allegation that Global had a "duty" to maintain the secrecy of the
4   information is unavailing unless the basis and nature of the alleged "duty" is
5   specified.

6       Moreover, Seowon's allegations that its alleged "trade secrets' were
7   "misappropriated" fails because it does not plead adequately the "improper means"
8   by which Global acquired the secrets.  **Civil Code** §3426.1(a).  All Seowon does is
9   allege that it shared the data with Global because of Global's "misrepresentations."
10
11      Accordingly the Fourth Counterclaim should be dismissed.
12
13  **6.      THE ABBREVIATED, VAGUE AND CONCLUSIONARY**
14  **ALLEGATIONS OF THE FIFTH COUNTERCLAIM DO NOT**
15  **STATE A CLAIM FOR "INTERFERENCE WITH CONTRACT**
16  **AND/OR PROSPECTIVE ECONOMIC RELATIONS."**
17      Seowon's fifth counterclaim for "international interference," broadly alleges
18  that it "maintains contracts and economic relationships" with "customers and
19  vendors."  Global allegedly knew of these contracts and relationships, and "acted
20  intentionally to induce a breach or disruption of these contracts and relationships
21  by, among other things, making false statements to Seowon's new and potential
22  customers." [Counterclaim, ¶53 - 54, pg. 22, lns. 9-15] Yet Seowon does not
23  identify a contract, nor an existing customer, nor a potential customer, that Seowon
24  lost due to Global's "intentional acts."  Seowon neglects to allege even a single
25  instance of disruption and attendant damage.  The only "intentional act" of Global
26  that Seowon identifies is that of "making false statements to SEOWON'S new and
27  potential customers."
28

1   This pleading fails to meet even the specificity requirements established in

2   the cases of **Bell Atlantic Corp. v Twombly** (2007) 550 U.S. 544 and **Ashcroft v**

3   **Iqbal** (2009) 556 U.S.662. "To survive a motion to dismiss, a complaint must

4   contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

5   plausible on its face.'" **Ashcroft v Iqbal**, *supra*, 556 U.S. at 678 (quoting **Bell**

6   **Atlantic Corp. v Twombly**, *supra*, 550 U.S. at 570).  "A claim has facial

7   plausibility when the plaintiff pleads factual content that allows the court to draw

8   the reasonable inference that the defendant is liable for the misconduct alleged. Id.

9   Threadbare recitations of the elements of a claim supported only by conclusory

10  statements will not suffice. Id.

11       Seowon's pleading of its fifth counterclaim for "intentional interference"

12  simply recites in conclusory fashion the threadbare elements of the two torts found

13  in California Civil Jury Instructions 2201 and 2202.  Accordingly, it should be

14  dismissed.

15

16       **7.    SEOWON'S SIXTH COUNTERCLAIM FAILS TO STATE A**

17       **CLAIM UNDER THE LANHAM ACT**

18       In perhaps its most summary, threadbare and conclusory counterclaim of all,

19  Seowon claims that Global violated the **Lanham Act**, 15 **U.S.C.** §1051 *et seq*.,

20  because Global "used in commerce words, terms, names, symbols, or devices or a

21  combination thereof; or false designation of origin, false or misleading description

22  of fact or false or misleading representation of fact in marketing, distributing and

23  selling SEOWON'S products without a proper license or authority to do so."

24  [Counterclaim, ¶57, pg. 22 lns. 22-26]  It is evident that Seowon has here simply

25  copied *in haec verba* the language of 15 **U.S.C.** §1125(a).

26       To establish a violation of the **Lanham Act** for an unregistered mark under

27  15 U.S.C. §1125(a), the plaintiff must demonstrate: (1) the mark is valid and legally

28

protectable; (2) the plaintiff owns the mark; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services. **A&H Sportswear, Inc. v Victoria's Secret Stores, Inc.** (3rd Cir. 2000) 237 F. 2d 198, 210. Additionally, where the mark is unregistered, the plaintiff must show: (1) that it was the first to adopt the mark in commerce; (2) that it has used the mark continuously in commerce since its adoption; and (3) its mark is inherently distinctive or has acquired "secondary meaning." **Douglas v Osteen** (3rd Civ. 2009) 317 Fed. App.'x 97, 99.

In its **Lanham Act** counterclaim, Seowon has simply copied the verbiage of the particular remedies statute without regard to what elements it must plead and prove.  No mark is identified, no validity is alleged, no likelihood of confusion is asserted. This is self evidently insufficient to give either Global or the Court proper notice of the substance of its claim under **Twombly** and **Iqbal** and hence it must be dismissed.

## 8.   CONCLUSION

The counterclaims of Seowon make very grave accusations against Global: inter alia, that Global made intentional misrepresentations to Seowon in order to induce Seowon to take action to Seowon's own detriment; that Global treacherously obtained a product certification, which both Global and Seowon had cooperated to obtain for their mutual benefit, in Global's own name to the exclusion of Seowon; and finally that the 2015 exclusive distributor agreement, which Global principally relies on in asserting its own claims herein, is in fact a criminal forgery. These accusations of egregious conduct by Global are nonetheless pled in terms that allow neither Global nor the Court to ascertain the plausibility of the counterclaims beyond the threadbare, conclusory statements of the basic elements of the claim. For this principal overarching reason, the Court should grant Global's motion to

1     dismiss under Fed. R. Civ. P. Rule 12(b)(6) as to each counterclaim.

2

3     DATED: January 11, 2017          **LAW OFFICES OF STEVEN R. YOUNG**

4                                      /s/

5                                      _____
                                       Steven R. Young, Esq., Attorney for Plaintiff and
6                                      Cross-Defendant Global Telecom Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**NOTICE OF MOTION AND MOTION TO DISMISS  SEOWON INTECH CO.,
LTD'S COUNTER-COMPLAINT**

42

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

      I, Aida M. Gomez, am employed in the aforesaid County; I am over the age of 18 years and

4

not a party to the above-entitled action; my business address is 600 Anton Blvd., Suite 650, Costa
Mesa, CA 92626.

5

      On January 12, 2017, I served the foregoing document described as:

6

**Notice of Motion and Motion to Dismiss Seowon Intech Co., LTD's Counter Complaint;**

7

**Memorandum of Points and Authorities**

on the persons below as follows:

8

9

_x__    With the Clerk of the United States District Court of the Central District of California,
using the CM/ECF System. The Court's CM/ECF System will send an email notification

10

of the foregoing filing to the following parties and counsel of record who are registered

11

with the Court's CM/ECF System.

12

Shane W Tseng, Esq.
Michael L Lavetter, Esq.

13

**Lamb and Kawakami LLP**

14

333 South Grand Ave., Suite 4200
Los Angeles, CA 90071

15

Telephone No.: 213-630-5500
Facsimile No.: 213-630-5555

16

E-Mail: stseng@lkfirm.com
E-Mail: mlavetter@lkfirm.com

17

__     BY MAIL
I am "readily familiar" with the firm's practice of collection and processing correspon-

18

dence for mailing. Under that practice, it would be deposited with the U.S. Postal
Service on that same day with postage thereon fully prepaid at Costa Mesa, California in

19

the ordinary course of business. I am aware that on motion of the party served, service is
presumed invalid if postal cancellation date or postage meter date is more than one day

20

after date of deposit for mailing in affidavit.

21

I am employed in the county where the mailing occurred. The envelope or package was
placed in the mail at Costa Mesa, California.

22

23

_x_    (Federal) I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

24

EXECUTED on January 12, 2017, at Costa Mesa, California.

25

26

       _/s/_____

27

       Aida M. Gomez, Declarant

28